UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| **SAMUEL HUGH RUSSELL,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **DR-06-CV-016-AML/DGG** |
| | § | |
| **CITY OF UVALDE, TEXAS,** | § | |
| **CITY MANAGER JOHN HARRELL,** | § | |
| **In his Official and Individual Capacities,** | § | |
| **Defendants.** | § | |

**ORDER**

Pending before the Court is the report and recommendation of the Honorable Dennis G. Green, United States Magistrate Judge, filed May 21, 2007 (Docket Entry #32). On May 31, 2007, the Plaintiff filed an objection to the report and recommendation (Docket Entry #39).

When no party objects to a magistrate judge's report and recommendation, the Court need not conduct a de novo review. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made"). In such cases, the Court need merely review the report and recommendation to ensure it is neither clearly erroneous nor contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). However, when any report and recommendation has been objected to by either party, the Court is required to conduct a de novo review. 28 U.S.C. § 636(b)(1). This review calls upon the Court to independently examine the record and assess the applicable law. The Court is not required to conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Comm'n.*, 834 F.2d 419, 421 (5th Cir. 1987). In the present case, the Plaintiff has made specific objections to the report and

recommendation prepared by the Magistrate Judge; therefore, this Court will conduct a de novo review.

After examining the record, reviewing the report and recommendation, and assessing the applicable law, this Court is of the opinion that the recommendation contained in the report and recommendation is **ADOPTED**; however, this Court determines that the Plaintiff's objections are without merit, and the Court supplements the record to find that the Defendant City's Motion for Summary Judgment shall be **GRANTED** and that the Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

## I.  FINDINGS OF FACT

This 42 U.S.C. § 1983 lawsuit arises from the termination of Samuel Hugh Russell ("Plaintiff") as Chief of Police of the City of Uvalde, Texas  (Pl. Compl. ¶ 1).  The Plaintiff brings suit against the City of Uvalde, Texas ("the City") and City Manager John Harrell ("Harrell"), in both his official and individual capacities (*Id*. at ¶ 4).  The Plaintiff alleges that the Defendants unlawfully deprived him of his procedural and substantive due process rights, as guaranteed by the Fourteenth Amendment, "in the course and connection with the termination of his employment with Defendant City" (*Id*. at ¶ 1).

On February 13, 2001, the City approved the terms of an offer of employment as Chief of Police and tendered that offer to the Plaintiff  (Pl. Comp. ¶ 3).  The Plaintiff assumed the office of Chief of Police for the City on March 1, 2001 (*Id*.).  In a letter sent to the Plaintiff dated April 20, 2001, the Mayor of the City reduced to writing the employment offer approved by the City Council (*Id*. at ¶ 12; Pl.'s Resp. Ex. A).   The terms of the written employment offer stated that employment as the Chief of Police was to commence on March 1, 2001, followed by a six month evaluation

period (*Id.*)  The written offer of employment stated "at all times you will serve at the will of the Council; you are therefore, an 'at-will' employee" (*Id.*).  The Plaintiff formally accepted the offer on April 25, 2001 (Pl's Resp. Ex. A.).   After accepting employment, the Plaintiff remained employed with the City for several years and was never subjected to a performance review or given a written reprimand (Pl. Compl. ¶¶ 3, 13).

On June 21, 2004, Harrell issued a memorandum to the Plaintiff entitled "Job Performance," which requested a meeting with the Plaintiff, possibly concluding in the termination of the Plaintiff (*Id.* at ¶ 14).  Pursuant to the memorandum, the Plaintiff met with Harrell on July 16, 2004 (*Id.* at ¶ 15).  Harrell told the Plaintiff at the meeting that the "city needed new vision, direction and leadership" (*Id.*).  The Plaintiff and Harrell agreed to meet again on July 22, 2004, so Harrell could inform the Plaintiff of Harrell's decision regarding the Plaintiff's continued employment with the City of Uvalde as Chief of Police (*Id.*).  On that same day, however, Harrell sent to the Plaintiff a memorandum stating that the Plaintiff's employment as Chief of Police was terminated (*Id.* at ¶ 16).

The Plaintiff appealed his termination in a written letter sent to Harrell on August 3, 2004 (*Id.* at ¶ 17).  On August 9, 2004, the Plaintiff received a one sentence letter from Harrell denying the Plaintiff the opportunity to appeal the decision (*Id.* at ¶ 18).  The Plaintiff was not afforded a post-termination hearing (Pl.'s Reply, p. 2-3).

On November 30, 2006, this Court accepted the recommendation of the Magistrate Judge (Docket Entry # 17) and issued an order dismissing with prejudice all claims against Harrell, in his individual capacity (Docket Entry # 22).  The only claims that remained are those against the City.[1]

---

[1]  The Plaintiff's remaining claims against Harrell in his official capacity are treated as claims against the municipality, the City in this case.  *See Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996).

3

On May 21, 2007, the Magistrate Judge, again, issued a report and recommendation (Docket Entry # 32) stating that the City's Motion for Summary Judgement (Docket Entry #23) should be granted and the instant case dismissed with prejudice.  On May 31, 2007, this Court received objections to the report and recommendation by the Plaintiff claiming that the City failed to comply with established customs of termination proceedings because the Plaintiff had a right to have the City Council act as the decision maker in the Plaintiff's termination, and that he should have been afforded a hearing before the Council.  The Plaintiff claims these failures violated his constitutional due process and property interest rights in his position as Chief of Police.

## II. CONCLUSIONS OF LAW

### A.  SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment on a claim "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To defeat a motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

The Supreme Court has stated that:

[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment,  after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A court must "review the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party.*"  Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994).  However, the non-moving party must "go beyond the pleadings and by...affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

## B.  LEGAL ANALYSIS

The Fourteenth Amendment prohibits the deprivation of a protected life, liberty, or property interest "unless the deprived party has been afforded the benefit of those justice-safeguarding processes which are due by law." *Muncy v. City of Dallas*, 335 F.3d 394, 398 n1 (5th Cir. 2003) (citing U.S. Const. amend XIV, § 1).

For a due process claim to be successful in the context of public employment, a plaintiff must show that "(1) he had a property interest/right in his employment and (2) his termination was arbitrary or capricious." *Bolton v. City of Dallas, Texas*, 472 F.3d 261, 264 (5th Cir. 2006) (citing *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).  *See also Honore v. Douglas*, 833 F.2d 565, 568 (5th Cir. 1987)).

"A property interest is created where the public entity has acted to confer, or alternatively, has created conditions that infer the existence of a property interest by abrogating the right to terminate an employee without cause." *Bolton,* 472 F.3d at 264.  "Thus, the Supreme Court has held that where the applicable law provides that a public employee will be discharged for `good cause only,' the employee has a legitimate claim of entitlement to the position, which is a property interest protected by the Due Process Clause, but where there is no such provision for discharge the

employee has no such entitlement." *Robinson v. Houston-Galveston Area Council*, 566 F.Supp. 370, 375 (S.D. Tex. April 4, 1983) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976), stating no entitlement where state employee, as a matter of state law, holds position "at the will and pleasure of the city"). "Although public employees can be endowed with constitutionally-protected property interests in their employment, a property interest is not incidental to public employment and must be located in an independent source, such as state law." *Id*. (citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)).

In determining whether a property right was created, the Court must look to Texas state law. Texas is an employment-at-will state. *Moulton*, 991 F.2d at 230 (citations omitted). "Absent a specific contract to the contrary, employment contracts are terminable at will by either party." *Id*. "Under Texas law, home rule cities[2] may determine by charter whether employment in certain city offices is at will or continuous absent just cause for dismissal, and Texas courts will give effect to such charter provisions." *Bolton*, 472 F.3d at 264, n2 (citing *Henderson v. Sotelo*, 761 F.2d 1093, 1096 (5th Cir. 1985)).

In the present case, a letter dated April 20, 2001, from the mayor of the City to the Plaintiff extended an employment offer as Chief of Police to the Plaintiff. In this letter, it explicitly sets out that "at all times you will serve at the Will of the council; you are therefore, an 'at-will' employee" (Def. City of Uvalde Mot. for Summ. Judg., Ex. B). Clearly, the language contained in this letter put the Plaintiff on notice that his status was as an at-will employee from the time of his acceptance of the position. As discussed above, an at-will employee status does not create any type of protected

---

[2] As stated in page 2 of Defendant City of Uvalde's Motion for Summary Judgment, and there being no evidence to the contrary from the Plaintiff, the City of Uvalde, Texas is deemed such a home rule city.

property interest or right in employment.  Since the Plaintiff fails the first prong of the test set out above and does not hold a property interest in his employment, he is not entitled to claim a violation of his due process rights.

However, the Plaintiff claims that he was deprived of his property interest when he was denied an appeal before the city council (Pl's Objection and Mem. Of Law in Opp. to U.S. Mag. Judge's Rep. and Recommend., p. 5).  The Plaintiff further claims that the employee manual, the city code, and the custom of affording employees due process consideration regarding their employment establishes contractual rights that are property interests (*Id)*.

Since there was no formal written contract of employment between the Plaintiff and the City, there are two potential sources to establish contractual rights in employment – the city charter and code, and the employee handbook.

The employee handbook, Section 1-1, provides in pertinent part:

> All employment by The City of Uvalde is in the form of "at will" employment, meaning that it can be terminated by either employer or employee at any time for any or no reason; nothing in these regulations shall be held to alter the "at will" nature of such employment.

(Def. City of Uvalde Mot. for Summ. Judg., Ex. A).  Additionally, the very next provision, Section 1-2, of the handbook provides for the existence of a <u>non-contractual</u> relationship (emphasis added):

> The regulations herein provided are merely general guidelines which the City may unilaterally rescind or modify at any time without notice.  The regulations are not intended to be, nor shall they be held to be, a contractual obligation.

*Id*.  Section 7-7 of the employee manual also states that "nothing in this section shall alter the 'at-will' employment status of the employee..." *Id*.  Section 7–Responsibility, Discipline, and Grievance Procedure also states in its general policy statement that:

...[N]othing in this general policy statement, nor any of the other subsections of this section shall prevent any department head from taking immediate formal disciplinary action, including without limitation, demotion and termination, when such action is determined by the department head, and/or the City Manager to be in the best interest of the City, and such right to take immediate action is hereby preserved.

(Resp. to City of Uvalde Summ. Judg., Attach. 4).

It is evident throughout the employee handbook that no provision alters the "at-will" employment status of any City employee.  Therefore, no contractual rights are established by the employee handbook and, therefore, no property interests are created which the Plaintiff may rely on to give rise to a cause of action.  "Handbooks are nothing more than general guidelines and not intended to alter the at will rule." *Moulton*, 991 F.2d at 231 (citing *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536 (Tex.App. 1982)).

In examining the city code, municipal code Chapter 2.56.010 states, "the executive officer of the police department shall be the chief of police, who shall be appointed by the mayor, subject to confirmation by the city council" (Def. City of Uvalde Mot. for Summ. Judg., Ex. C).  There is no mention in the municipal code as to the employment status of the chief of police, nor the termination procedure for the chief of police.  The Plaintiff claims this provision gives the city council and mayor authority over executive officers of the city, but this claim in unfounded.  The provision the Plaintiff points to only speaks of the appointment power.  It says nothing of the mayor or city council retaining any power over the chief of police.  Hence, this provision does not create any type of contractual rights nor does it alter the "at-will" employment status of employees.  Again, the Plaintiff fails to establish any type of property interest in his employment based upon the provisions of the city code.

The final inquiry by this Court is in analyzing the city's charter.  Article II, Section 6, of the

8

City Charter entitled "Council-manager form of government" provides in pertinent part that:

(a)      The form of government of the city is the council-manager form. The mayor, with the advice and consent of the city council, appoints the city manager, who serves at the will of the council...

(b)      The city manager is the chief administrative officer of the city, responsible to the council for the efficient administration of all the city's affairs placed in the manager's charge by or under this Charter. The city manager shall:

     (1)      Appoint and, when necessary for the good of the city, suspend or remove all appointive administrative officers provided for by or under this Charter and department heads, except as otherwise provided by this Charter, by law, or by personnel rules adopted pursuant to this Charter.

(c)      Except for purposes of inquiries and investigations under this subsection, the city council or its members shall deal with city officers and employees who are subject to the supervision of the city manager solely through the city manager.

This particular section of the city charter serves a two-fold purpose. It directs that the city manager has the authority to remove appointive administrative officers, which clearly contradicts the Plaintiff's argument that the charter establishes contractual rights affording employees due process consideration. No section in the charter establishes contractual rights, nor does it clearly alter or modify the "at-will" status of employment.

The charter, moreover, lacks any type of "for cause" language which would create a property interest in employment. "Absent any 'for cause' language, this type of charter create[s] no property interest...The *Henderson* holding rests on the charter's *lack* of 'for cause' language, not its inclusion of possible 'at will' language. Thus, *Henderson* does in fact support the [ ] contention that the Charter does not create a property interest in employment based on the undisputed fact that the Charter does not contain any 'for cause' language." *Moulton*, 991 F.2d at 231 (citing *Henderson*,

761 F.2d at 1096-97).

The Plaintiff's claims that the employee manual, city charter, or city code establish contractual rights that mandate a property interest in his employment must fail.  The Court finds that the language of these documents do not alter the fact that all employees maintain an "at-will" status in their employment and, thus, do not have, or retain, any property interest in their employment.  The above referenced provision of the city charter clearly rebuffs the Plaintiff's claim that only the city council had authority to terminate the Plaintiff's continued employment as chief of police.  While the city code is silent to regarding termination procedures, the employee handbook and city charter clearly establish that the city manager may terminate City employees at anytime.

The Plaintiff's additional point of contention is that the City did not provide the Plaintiff with the proper procedural due process as accorded to previous chiefs of police and executive employees of the City.  The Plaintiff claims that the City had established, customary practices in place for terminating executive employees.  The Plaintiff's argument, however, does not overcome the first step of the basic test for deciding if a due process claim shall be successful; that is whether the Plaintiff had a property interest in his employment, which he did not.  The Plaintiff seems to completely bypass this step of the analysis and tries to focus on the due process aspect of the claim. This argument cannot be reached without a showing that the Plaintiff has a property interest in his employment, and the Plaintiff has failed to do so.

The Plaintiff attempts to support his claim that there were established customary practices in place for terminating executive level employees by relying on the affidavits of Mr. Cale Diaz and Ms. Margie Cardenas.  Mr. Diaz's affidavit states that he witnessed the established termination procedures for the then chief of police in May 1995, in which the decision was made by the city

council to terminate  (Def. City of Uvalde Mot. for Summ. Judg., Ex. A).  However, the employee manual which provides the city manager with termination power was updated on February 23, 1999, which was well after the 1995 procedure observed by Mr. Diaz and does not show that this was the established custom at the time of the Plaintiff's tenure.  The affidavit of Ms. Cardenas discusses a termination of the then city manager by the city council in 2000. (Pl.'s Resp. in Opposition to Mot., Ex. 9).  Again, this fails to show an established custom for the chief of police because the city manager is subject to the will of the city council alone[3], whereas, the chief of police also falls under the termination powers of the city manager.

The Plaintiff was in fact afforded due process in appealing his termination as chief of police. He received notification from the city manager on June 21, 2004, that a meeting was needed to discuss job performance which could lead to termination (Def. City of Uvalde Mot. For Summ. Judg., Ex. B).  A meeting was held with the city manager and the Plaintiff on July 16, 2004 (*Id*.). They agreed to meet on July 22, 2004, at which time the city manager would inform the Plaintiff of the city manager's decision regarding the Plaintiff's continued employment.  The city manager did, in fact, inform the Plaintiff that he was terminated (*Id*.).  On August 3, 2004, the Plaintiff forwarded a letter to the city manager appealing his decision of termination (Resp. City of Uvalde Summ. Judg., Attach. 3).  On August 26, 2004, there appears to have been documents generated, although a formal title is missing, that show the city manager proffered testimony of some type regarding the termination of the Plaintiff  (*Id*. at Attach. 6).  It is apparent that, although the Plaintiff was not due any type of procedural process since his status was that of an "at-will" employee, he was in fact

---

[3] Article II, Section 6 of the city charter states the city manager serves at the will of the council.

11

afforded some process to dispute his termination.

Furthermore, the Plaintiff concedes that the chief of police shall serve *at the will* of the council (Pl. Obj. and Mem. of Law in Opp. to the U.S. Mag. Judge's Rep. and Recomm., p. 7) (emphasis added).  These words do not in any way create a property interest in employment.  While the Plaintiff would like the Court to believe that the Plaintiff's rights were violated because he was terminated by the city manager instead of the council, this argument does not have merit.  The Plaintiff is unable to overcome the first hurdle of establishing a property interest in employment.  Without that, the Plaintiff cannot claim any entitlement to any due process procedures.  It has been held that provisions conditioning a public employee's removal on acquiring the advice and consent of the city council do not "create a property interest which otherwise did not exist."  *Henderson*, 761 F.2d at 1097-98.  The Court also notes, again, that the city charter and employee handbook both establish a precedent for the city manager to remove employees, without the council's primary involvement. The Plaintiff has also failed to show that the City had any established termination procedures and practices at the time of the Plaintiff's service as chief of police.

The Plaintiff fails to argue that his termination constituted arbitrary or capricious conduct. The Court, therefore, does not reach this prong in its analysis.

### III.  CONCLUSION

The Court **ADOPTS** the report and recommendation of the Magistrate Judge.  For the reasons set forth above, it is hereby **ORDERED** that Defendant City's Motion for Summary Judgment (Docket Entry #23) is **GRANTED**, and Plaintiff's claims shall be **DISMISSED WITH PREJUDICE**.

SIGNED this 1st day of October, 2007.

_____

ALIA MOSES LUDLUM
UNITED STATES DISTRICT JUDGE